Your Honor, I'd like to reserve two minutes, please. All right. Benjamin Nix for Precise and Roxanne Abde. This morning, I'd like to focus on two points of error from the trial court. First, the motion to dismiss that was granted on the UNRWAC claim. Second, the court's grant of summary judgment on the contract and fraud claims. The motion to dismiss the UNRWAC claim was error by the court for several reasons. First, the court improperly concluded that there was only one statement that showed discriminatory motive by Gil Leonard, the manager at MAG Aerospace. In fact, a review of the original complaint shows that there were other actual affirmative representations of his conduct towards Ms. Abde beyond the statement, you need to put your balls on the table and take a risk. In addition to that comment, there was statements of offensive conduct regarding further harassment and bullying telephone calls to Ms. Abde after the balls on the table comment. He also engaged in subjective, or excuse me, offensive, sexist, and misogynist conduct with regard to other employees. Finally, in the original complaint, we alleged that on information and belief, Leonard had a history of engaging in sexual harassment and misconduct with regard to women at MAG. Taken together, all of those facts demonstrate a discriminatory motive on behalf of Leonard in terms of not doing business, refusing to do business with Precise Aerospace. With regard to the comment, put your balls on the table, the trial court also made error in terms of drawing an inference of that statement in favor of MAG. On the motion to dismiss, the court was required to look at that in favor of the non-moving party. But instead, the court concluded that that statement, put your balls on the table and take risk, can be inferred to be an invitation to do business with MAG. I would submit it's also a reasonable inference, based on that offensive comment, that it was showing a lack of respect and disdain for the person he was talking to, a female. So it further supports a discriminatory animus. Finally, the court erred on the motion to dismiss by not permitting an amendment. In the opposition to the motion to dismiss, we requested an amendment, and the court denied that request in its order and said an amendment would be futile. The court's rationale was that Precise independently had a fraud allegation and said in that allegation that in 2012 and 2013 promises were made without an intent to perform. However, under Rule 8D, we're permitted to make allegations that are not consistent and proceed on each theory until the information is developed at trial. The other error about the trial court's determination is discriminatory motive under the UNDER Act doesn't have to be the sole causal factor for the loss of the business. It just has to be a substantial factor. So under all of those facts, the trial court's denial of the amendment was improper. The trial court also improperly denied a motion to amend, which we brought after the original dismissal of the UNDER Act claim. That amendment put forth additional factual allegations, which, assuming the original allegations were not sufficient to support the UNDER Act claim, would support the UNDER Act claim. Those are at ER 020022 and ER 991. The respondent has talked about the lack of standing of Precise to file a claim under the UNDER Act. However, under the plain language of Civil Code 51.5a, Precise is associated with Ms. Abdee, who was the victim of the discriminatory conduct. And as such, Precise has independent standing under the UNDER Act to seek damages for the losses. The Osborne case, which we cite, supports this association standing position. Turning to the court. When the district court did not leave to amend, it said any amendment would be futile because Precise also alleged that MAG never intended to make Precise the sole source manufacturer. So how is that consistent with an assertion that it was gender-based discrimination? Well, as I said, Your Honor, you're allowed to make allegations at the pleading stage that are not consistent. So it was an alternative theory that Precise believed, and that's the way it's phrased, Precise believed that MAG did not intend to perform its promises when it entered into the agreement in 2012 and 2013. But it's not established, and it's an alternative theory upon which you pursue your claims independent of the UNDER Act claim. The other fact that is important, however, is after the original promises were made that were on information and belief fraudulent, there was an additional set of promises in March of 2014. Following that, in 2015, that's when Mr. Leonard was established as the manager of the account, the Precise MAG account, and then the discriminatory conduct took place, and then the business was taken away. Soon after those statements were made in June of 2015, Precise lost... What statements? What statements were made? I'm talking about the balls-on-the-table comment, and then the following up harassing and bullying telephone calls. Those were in June of 2015. Following that, then business did go away. They took away a substantial amount of machining. They also took away orders, and they started sending the projects over to another plastic injection molder. Was that as a result of the request for proposals or separately? That was much later. Well before then, the defendants in the underlying case started to breach the promises that were made, the original contractual promises, and it's our position that that was a result of the discriminatory conduct towards Ms. Abde when she objected to that. Is there a statute of frauds problem there? A statute of frauds, well, we did address that, Your Honor. This is specially manufactured goods. There's no question about that. Everybody agrees these are specially manufactured goods. Just to clarify for me when you're talking about the specially manufactured goods exception in the statute of frauds, how many oral contracts were you alleging were here? Is it one oral contract? Is it two? Is it three? I had some difficulty gleaning that from your briefing, your arguments, and your complaint. Yeah, it was two basic promises, Your Honor, two basic contracts. So there was a set of negotiations, discussions, and promises made in late 2012, early 2013, and then what happened was MAG took away, they promised $5 million worth of business. They took away $2 million worth of business. And what was the second contract? Then the second contract comes after precise complaints about that, and then in March of 2014, there was a promise of continuing to do $3 million worth of business for the next 10 to 12 years. Is there anything in any of the complaints you filed that actually sort the putative contracts in the way that you just stated? Does the complaint ever say here's contract one, here's contract two? Oh, absolutely. We allege the specific things were promised by the buyer for MAG in 2012-2013, there's five or six elements, and then we allege how that was reiterated by Mike Neves, the purchasing manager, in March of 2014. I thought you said March 2013. No, March of 2014. That's the second promise. And so point us to the excerpts of record pages that pinpoint those particular agreements in the complaint. It's ER256-028. ER256? To 028. To 028? 258, sorry. Okay. 258. So, yes, we do allege the specific terms of both of those contracts. So dealing with the specially manufactured goods exception, there's basically two parts to it. If you have a substantial beginning of your performance or you have commitments for procurement, then you fall within that exception. Here, the trial court only addressed the first one, substantial beginning, and it made a ruling that was directly inconsistent with the statute. The trial court says that PRECISE's performance was not a substantial beginning pursuant to that statute because the parts PRECISE made were made pursuant to purchase orders. So I'm at ER256, that's not the complaint. Excuse me, Your Honor, I'll have to find that and get that for you. Okay. That's the reference for the performance, and I apologize. It looks like some deposition testimony, but I was asking about where in the complaint you made those PRECISE allegations regarding the contract. And I will get that for you, Your Honor. All right, thank you. Okay, so back to the substantial beginning. The trial court basically reads into the statute an exception that if you're doing the substantial beginning pursuant to purchase orders, then you cannot avail yourself of that exception. However, the Vision Tech case is well-reasoned and held that if you are performing pursuant to purchase orders, that is sufficient to fall within the substantial beginning exception of the statute of frauds. Is it your contention that you made the substantial beginning with regard to both of the contracts that you allege there were? Yes, absolutely. The contracts were entered into in 2012-2013. Immediately PRECISE begins performing, and as we state in the complaint and as was addressed in summary judgment, PRECISE got MAG out of a jam by performing that work. And I apologize, that was the citation to the work, Your Honor, and I will get the one for the complaint. Are the ER numbers at the top of the page on your Excel tool record? No, they should be on the bottom right. The other issue, Your Honor, in terms of the trial court there is it ignored the second part completely of 2201 of the Civil Code, the commitments for procurement. The commitments for procurement exception applies where a manufacturer such as PRECISE purchases equipment, materials, or other things to perform the contract. Here PRECISE did two things. They allocated the bulk of its production facilities for this project. More importantly, it purchased 1.3 million of new machines and equipment specifically to manufacture these goods. This information was submitted to the trial court, but it was ignored in terms of the ruling on the summary judgment motion. Counsel, you've identified a document at ER-427 that you claim takes this out of the statute of frauds, a writing. And this is the December 23, 2013 letter, is that right? Yes, Your Honor. So does that take both contracts out of the statute of frauds or just one of them? And if it's just one, is there any place you actually tell us that? This is the one that this was dated December 23, 2013. Yes. So it would take the first contract out of the statute of frauds because this has to do with the Revolution Toilet Project, which was part of the original $5 million of business that was promised to PRECISE by MAG and then was taken away. So that confirms the Revolution Toilet portion of the original contract. And it is an invitation to a meeting, but it congratulates PRECISE on being awarded the project. The district court improperly read the letter in favor of MAG and discounted the interpretation in favor of PRECISE, which is improper on summary judgment. MAG has made the point that the writing doesn't contain any enforceable terms or conditions of the agreement, but, Your Honor, under Civil Code 2201, Subpart 1, in the area of sale of goods, you actually don't have to have the terms and conditions. You just have to have some writing confirming the agreement. Well, even if we were to agree with you that the district court interpreted this in the light most favorable to the moving party, what can we take from this writing as to anything about the nature of the contract or even what part of the contract you've been selected for? Even if we agree that this is actually welcoming you to the team because there is something, I mean, this is exceedingly general and went to a whole bunch of partners. Well, but it went specifically to PRECISE by email by the purchasing manager, and that information was presented to the trial court on the summary judgment ER0426. And it says you're considered as a key partner for the success of the new product. The new product is the Revolution Toilet project, which is part of the original promise of the $5 million of business per year. So it confirms a major component of discussions that were had between MAG and PRECISE that were confirmed in at least in part by this letter. So, counsel, I'm looking at your First Amendment complaint, and when you come back, I'll give you a minute for rebuttals if I can. The second cause of action that talks about late 2012 and early 2013 is couched in terms of negligent misrepresentation, not breach of contract. And then the third cause of action is the breach of contract cause of action that talks about March 2014. So could you just, when you come back on rebuttal, could you look at that? Yes, absolutely. And tell us how that met the statute of frauds requirement.  Thank you, Your Honor. Good morning, Your Honor. May it please the Court. Sondra Hemrick from Riley Safer Homes in Kansilla on behalf of the appellee MAG Aerospace Industries. I will address the same issues that were raised by appellant's counsel in his argument and hopefully respond to the Court's questions as well. So starting with the Unruh Act. The plaintiffs... Let me back up. So let's start with the dismissal, the 12B6 dismissal of the Unruh Act claim and the First Amendment complaint by Judge Klausner. Judge Klausner was absolutely correct that the plaintiff's complaint only included one properly pleaded factual allegation to support that claim. It was the allegation about the put your balls on the table statement. And you heard plaintiff's counsel tell you that, well, there were allegations that after that statement was made, there were, as he described it, further harassing and bullying phone calls. Those are conclusions. That's a conclusory allegation. That's not sufficient under 12B and ICBAL. But the trial judge didn't allow them to amend because the trial judge said they had alleged elsewhere in the complaint that there were other reasons for the termination that were unrelated to the civil rights claims. How is that a legitimate reason for not allowing someone to amend when plaintiffs are allowed to allege differing reasons and even inconsistent allegations? So I think there are several things there, Your Honor. One is that the Reddy case, and plaintiffs acknowledge this in their own brief, the Reddy case says that when you're seeking leave to amend and you're trying to file an amended complaint, your amended complaint cannot contain allegations that are inconsistent with your original pleading. So although you can plead alternative theories, for example, you can plead in your complaint a set of facts and then your causes of action can be there was a breach of contract, but if it wasn't enforceable for some reason, then we've got an unjust enrichment theory. So alternative legal theories based on the same set of facts in your original complaint. The Reddy case says, and again, plaintiffs acknowledged it, that when you're looking for leave to amend, you have to be consistent with your original pleading. So they could not. And this is not a simple collateral thing. This is like wanting to allege that the traffic light was red, but if you don't like that, your honor, the traffic light was green. This is not a collateral allegation. They, none of the additional, well, so I'm back up. So they could not, plaintiffs could not have amended their complaint to state a claim without contradicting their fundamental bedrock allegation, which was that precise, that Meg never intended to keep any of these promises, not the ones that were made in 2012 and 2013. I don't understand why it's inconsistent to say they defrauded us, but in addition, they discriminated against us. Because it has to be, the discrimination has to be a substantial motivating factor. Now, perhaps in theory, they could have come up with allegations to show some kind of causal link that would have been an additional substantial motivating factor. That word substantial is important, or substantial motivating reason for the eventual termination. But they didn't do that. They never did that. At most, what they were proposing to allege was sort of sexism in the air, that maybe Mr. Lennard was a sexist guy. But they never linked that to any kind of actual causal link to the termination. And, in fact, they couldn't, because their own allegations make clear that Meg continued to purchase parts from Precise for two years after Mr. Lennard became the vice president of procurement. And remember, their complaint says it was only after Mr. Lennard became vice president of procurement in January 2015 that sexism and misogyny crept into the dealings. Well, after Mr. Lennard became the vice president of procurement, as they say themselves, they continued to purchase for another two years, and, in fact, another 18 months, even after the alleged June 2015 statement. In addition to that, at the time plaintiffs sought to file that second amended complaint, they had in their possession documents that had been produced in discovery, which showed that Meg's business with Precise substantially increased after Mr. Lennard became the VP of procurement. So in 2014, Meg purchased approximately $500,000 in injected molded parts from Precise. In 2015, Meg purchased approximately $2.5 million under Mr. Lennard as VP of procurement. And in 2016, Meg purchased $3 million. So filing the proposed second amended complaint and trying to allege that somehow, as a result of Mr. Lennard becoming vice president of procurement and this sexism or misogyny in the air, that they then reduced their purchases or stopped purchasing, that would have just been false. They couldn't have done it consistent with Rule 11. So none of the allegations that they proposed to include, either in their opposition to the motion to dismiss or in their proposed second amended complaint, established a causal connection between the alleged misogyny and the termination. It has to be a substantial motivating reason. There is no evidence of that. So if the Court has no further questions on the UNRWA Act, I will move on to the breach of contract claims. As you pointed out, Judge Rawlinson, you are absolutely correct. The breach of contract claim in the first amended complaint is directed solely at the alleged March 2014 contract, not at the promises that were allegedly made in 2012-2013. They used those as a basis for their fraudulent inducement claim, but not for the breach of contract claim. So the counsel is simply incorrect when he says that. In terms of the statute of frauds arguments, I apologize, I have to find my notes here. Here they are. And let's talk about the specially manufactured goods. Judge Klausner's interpretation of the specially manufactured goods provision, and in particular what is required to meet that and what a substantial beginning is, is absolutely in line with how other courts and commentators have construed and applied that exception. So, for example, Sharon Johnson Coleman, and this is an opinion that we cited, Sharon Johnson Coleman of the Northern District of Illinois observed in the Control Solutions v. Oshkosh case that cases applying the substantial beginning requirement have construed it narrowly, consistent with the purpose of the exception, which is to prevent sellers from being settled with custom goods they cannot sell. Yeah, but the statute talks about specifically substantial beginning of their manufacture or commitments for their procurement. So the legislature could have passed a different statute, and the trial judge's policy arguments might well be correct as policy arguments, but it seems like he's interpreting a statute other than the one the legislature wrote. I don't think that's true, Your Honor. I think actually his interpretation is entirely consistent with the plain language of the statute in a couple different ways. One is it's important to note that this exception is expressly limited to situations where the specially manufactured goods are not suitable for sale to others in the ordinary course of the seller's business. That language supports, it demonstrates that the statute on its face is concerned with the situation where the seller is going to end up stuck with custom goods that he can't resell. Except it has specific language that allows it to be asserted if all you've made is commitments, even if you don't have the goods. I will agree with that, Your Honor, but I also think it's important to look at what the actual language of that piece is as well, because what the language is is commitments for their procurement, i.e., commitments for procurement of the specially manufactured goods. And as the Vision Tech case itself shows, and this is also Willison on contracts, Section 2619 says this, the plain meaning of procure is to get or obtain possession of. So commitments to procure encompasses if you, as the seller, have to go out and procure from some third party the specially manufactured goods that the buyer will then get. So you're essentially acting like a middle man. And, in fact, that would be the distributor case with the shower doors and the mirrors. That was an example of that case. The seller in the distributor case had to buy the special cut mirrors from a third party. That would be commitment for procuring those specially manufactured goods. In the Vision Tech case, similarly, the plaintiff had to make commitments to procure specially manufactured components that then went into the goods that it put together for the defendant. None of those cases are anything like what is being claimed here, which is because we went out and bought machinery, just, you know, standardized capital equipment expenditure, it's not specialized machinery, it's standard injection molding machinery, there's no showing it can't be used to make just about any parts, it's not designed or specialized for our parts, for my ex-parts, there's no showing it can't be resold, it has independent value. But that's not the basis on which the trial judge ruled. It is not, but this court can affirm on any basis that's supported by the record. I think it's absolutely supported by the record that the case law is clear that just going out and buying machinery, you could say something like, I bought this warehouse, that's not what the specially manufactured goods exception is designed to do. The statute doesn't say the machinery has to only be good for these goods, it says it's made a substantial beginning of their manufacture, so even if they can manufacture other goods, buying the machinery for their manufacture qualifies. That's not actually what the statute says. It says commitments for their procurement. So we have to go out and obtain the goods. So it's either made a substantial beginning of their manufacture or commitments for their procurement. Yes. So substantial beginning for their manufacture, substantial beginning for the manufacture of the specially manufactured goods. That could be the machinery that is to manufacture those goods, even if it could also be used to manufacture other goods. No court that I'm aware of has interpreted the language that way, and it would really undermine the whole point of the statute of frauds. The point of the statute of frauds, and this is in the commentaries and in the cases, is if the seller has actually undertaken and manufactured these goods that it can't sell to anybody else, and again, that's an important thing, it has to be, you can't resell these goods. That's an important element. If they've actually done that, that is good evidence that they must have had some kind of a commitment for the purchase of those goods. And in addition, even in those cases, the courts have almost uniformly limited the recovery to the goods that were actually manufactured. And so you have cases like the Uprecht v. IBM court case where the court said, yes, your actual manufacturer of 7,000 specially made machine parts as part of an alleged oral contract for 50,000 machine parts did not constitute a substantial beginning sufficient to make the alleged oral contract for the whole 50,000 enforceable. So we'll enforce the 7,000, you'll get paid for that. But otherwise, you could say, well, I manufactured 7,000, so that shows I had a contract for 50,000 or 100,000. Plaintiffs' counsel, what's your position as to why the December 23, 2013 letter doesn't take the alleged oral contract or contracts out of the statute? Why isn't this a sufficient writing? So for exactly the reasons you yourself said, Your Honor. And just to be clear, and I believe that this was clarified by plaintiffs' counsel, but they were very clear in their briefing that their position is that that writing takes the Revolution Toilet Project out of the statute of frauds, nothing else. But the reasons are exactly what you said, Your Honor. It is an extremely generic letter. As you pointed out, it doesn't even identify what part of the project we're talking about. It goes to suppliers, a variety of different kinds of suppliers of different potential parts of the project. So it doesn't even identify injection molding as opposed to. The judge said this line, You are today considered as a key partner, means not that you've been picked as a partner, but that we're just looking at you as a partner. Wasn't the judge interpreting this in the light most favorable to you? I don't believe so, Your Honor, because I really don't think there's any other reasonable interpretation of that letter, particularly in context. You're a partner. I consider you a partner. I've picked you as a partner as opposed to I'm going to look at you and decide whether you're going to be a partner. The use of the word partner, as was explained by some of the witnesses who testified, you're talking about we're looking at you as partners to help us develop this toilet, to help us design it, to help us find the best way to manufacture it. Does it give the people being invited a potential inside track on getting the job? Of course it does. That's why they participate. Look at the whole letter. Exactly. Get everything in there. And look at the whole letter? Absolutely, Your Honor. I mean, the letter is, as I said, very generic. It's addressed to, you know, contact name company. The salutation is generic. And it went to a variety of vendors. So did they have promises that it was confirming as well? I mean, it doesn't make sense to take this generic letter that went to a variety of potential suppliers and say this shows that there was this specific promise made to this one vendor who isn't even named in the. Counsel, just before you leave, you've exceeded your time, but you've abandoned your cross appeal. Is that correct? We have, Your Honor. Okay. Thank you. Thank you. Your bottle. Yes, Your Honor. Thank you. I've got a couple of sites. The first promise, and you may have already found it, Your Honor, is in paragraph nine of the complaint. What we were talking about, you were going to tell us where the contract language was. Yeah, and so the summary of the contract language is ER 0254 to 255. You're in the amended complaint? Yeah. No, the original. The original complaint. Well, the amended complaint is the operative complaint, correct? Well, the first amended is the operative complaint. That's correct. I thought you were referring to the one that we tried to file but was denied. No, what I thought we were asking you is where in the complaint can we find the allegations for late 2012, early 2013, where your client was promised $5 million and then in March 2014 promised $3 million. That was the question. Yes. Yes, Your Honor. I understood that. So in the amended complaint, which is the first amended complaint, which is the operative complaint, point us to those provisions that you're relying on. Okay, so the first promise, Your Honor, was summarized at ER 0254. What cause of action in the complaint, in the first amended complaint? This is in the background section, Your Honor. And then it's incorporated by reference. So what we do in the complaint is paragraph 9. And it summarizes the original promises, which included the revolution toilet. Paragraph 9 of the first amended complaint? Yes, Your Honor. I have to say I have some of the same confusion that Judge Rawlinson has. At least it may be an electronic issue because we both use iPads, but for some reason the ER page numbers are not appearing. So when you're mentioning these ERs, we're looking at the documents, and I kind of looked at Judge Rawlinson with a little confusion myself. I couldn't find it. But if you give us the paragraph and say it's the first amended complaint. Yes, paragraph 9. Paragraph 9 says Zodiac is a provider of water and waste systems. I don't know what the confusion is then, Your Honor, because we have paragraph 9 and 10. We'll sort it out. Okay. I'd be glad to submit something on that. But the bottom line is the letter that we're referring to that confirms the agreement on the revolution toilet project was sent in late 2013. It confirms the promises. Those promises then are, except for the revolution toilet, reiterated in the March 2014 meeting. So the reason why it's supportive of an agreement is it's a consistency there. There's an original promise made in late 2012, early 2013, and reiterated in March 2014. Your Honor, the counsel mentioned that all this information about business allegedly increased after the discriminatory conduct by Mr. Leonard. That's well beyond the appropriate analysis for a motion to dismiss. And we would dispute that in terms of what happened after the discriminatory conduct. With regard to the commitments for procurement, I'd just like to point out, counsel's statement that this was standard machinery and could be used anywhere is contradicted by the record. MAG was aware that Precise was purchasing this material, and this material was, these equipments were not something they used for any other customer. They bought them specifically for the MAG account. All right, counsel, you've exceeded your time. Would you wrap up, please? Your Honor, I would urge the court to reverse the trial court in terms of its granting of the motion to dismiss the UNRRA Act and also reverse the trial court with regard to the dismissal of the contract claims and the fraud claims on summary judgment. All right. Thank you, counsel. Thank you to both counsel for your arguments. The case is argued and submitted for decision by the court. That completes our calendar for the morning and the week. We are adjourned.
judges: Rawlinson, Owens, Bennett